# United States District Court

_Southern_ _____ DISTRICT OF _____ _Florida_

USA    v. _Robert Issa_

**EXHIBIT AND WITNESS LIST**

CASE NUMBER: _00-4075-Seitzer_

| PRESIDING JUDGE | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|
| _Ann E. Vitunac_ | _Janice LeClainche_ | _Michael Salnick_ |
| TRIAL DATE(S) | COURT REPORTER | COURTROOM DEPUTY |
| | _AV Tape# 00 27/28/29_ | _Sandra Acevedo_ |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 2 | | 4-25-00 | ✓ | ✓ | Copy of International Drivers License of Deft |
| 3 | | " | ✓ | ✓ | Copy of ID Found in Deft's Vehicle |
| 4 | | " | ✓ | — | Copy of Deft's Passport |
| 5 | | " | ✓ | ✓ | "                "              " |
| 6 | | " | ✓ | ✓ | Lease Agreement |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.



GOVERNMENT
EXHIBIT

CASE 4075- BSS
NO. 00- 6111 AEY

EXHIBIT
NO.    2

RL № 23668

الجمهورية اللبنانية

وزارة الداخلية مصلحة تسجيل السيارات والآليات

REPUBLIQUE LIBANAISE
MINISTÈRE DE L'INTÉRIEUR-SERVICE AUTOMOBILE

تجـــول السيارات الدولي
CIRCULATION AUTOMOBILE INTERNATIONALE

رخصـة ســوق دولـة
PERMIS INTERNATIONAL
DE CONDUIRE

اتفاقية ١٩ ايلول سنة ١٩٤٩ بشأن السير
Convention Internationale du 19 Septembre 1949

اصدار الرخصة
Délivrance du Permis :

Lieu  *Byrouth*          المحل  بيروت

Date  *6.11.1999*        التاريخ



(1) Signature et Sceau de l'autorité.
Signature et Sceau de l'association habilitée par l'autorité.

نموذج مجاني رسمي يحظر استعماله لغير الموظفين          ١٩٨٩

...ermis délivré à partir du Permis Libanais

Da... 1993

Le présent permis est valable, sur les terri-
toires de tous les États contractants mention-
cés ci-dessous, pendant un an à dater du jour
de la délivrance, pour la conduite des
véhicules appartenant à la catégorie ou aux
catégories visées à la dernière page.

Il est entendu que le présent permis ne
comporte en aucune sorte l'obligation où se
trouve le porteur de se conformer entièrement
aux lois et règlements relatifs à l'établisse-
ment ou à l'exercice d'une profession en
... ou dans chaque pays où il circule.

| A | B | C | D | E |
|---|---|---|---|---|

1  ISSA
2  Robert Antoine
3
4  1966
5  Beyrouth

| A | B | C | D | E |
|---|---|---|---|---|
| | | | | |

*Signature du titulaire*
ou empreinte du pouce

**EXCLUSIONS (pays) :**

I .......... V ..........
II .......... VI ..........
III .......... VII ..........
IV .......... VIII ..........

GOVERNMENT
EXHIBIT

CASE
NO. CR
      4075-BSS

EXHIBIT
NO.      3







GOVERNMENT
EXHIBIT

CASE
NO. 00    4C75-BSS    5841 AEV

EXHIBIT
NO.    4











GOVERNMENT
EXHIBIT

CASE
NO. 00 - 5699 - AEV

EXHIBIT
NO. 5

















# SHERLOCK HOME FINDERS, INC.

*"The Elementary Rental Solution"*

LEASE AGREEMENT ("Agreement") made **APRIL 5, 2000**, concerning premises described as follows: a **5 BR 4.5 BA** ☐FUR ☒ UNFUR at **2000 S.E. RANCH RD. JUPITER, FL 33478** (the "premises") between **RICHARD MCFAGUE & JEANNE YETZ**, the owner of the premises ("Lessor") by **SHERLOCK HOME FINDERS, INC. WHOSE ADDRESS IS:** 18091 N A1A, Jupiter, FL 33477, Lessor's duly authorized agent ("Agent"), and **ROBERT MADDA ISSA** of **31 RUE DUMONT BLANC, GENEVE, SWITZERLAND** ("Lessee").

1. **Lease Term:** Lessor leases the premises to Lessee for a term of **12 MONTHS** commencing on **APRIL 22, 2000**, at 2:00 PM ("Commencement Date") until the expiration of the Agreement on **APRIL 21, 2001**, at 10:00 am ("Termination Date"). Lessee must notify Agent in writing sixty (60) days prior to the Termination Date if Lessee desires to negotiate an extension of term. In addition to rent Lessee agrees to pay agent a $50 service fee for any extension of term less than 90 days. Lessor shall be under no obligation to provide such an extension of term or provide notice to Lessee to vacate upon lease expiration.

2. **Rental:** Lessee shall pay to Lessor/Agent the total rental sum of $ **45,500.00** (collectively, "Rental") as follows:

| | | | | |
|---|---|---|---|---|
| TOTAL RENT | A) $42,000.00 | | TAXES(Bed & Sales) | F) $ |
| PRO RATA RENT | B) $ | | PET FEE | G) $ |
| SECURITY DEPOSIT | C) $3,500.00 | | CLEANING FEES | H) $ |
| OTHER FEES | D) $ | | APPLICATION FEE | I) $ |
| INSPECTION FEE | E) $ | | ADMINISTRATION FEE | J) $ |

Total Rental due from Lessee to Agent in cleared funds (bank check, money order, travelers check) prior to the Commencement Date $ **28,000.00** which represents: ☐ prorate rent, ☒ first month's rent and, ☒ **SECOND THRU SIXTH** month's rent Advance Rent) and ☐ taxes, ☒ security deposit, ☐ pet fee, and **LAST MONTH RENT**. After the Commencement Date and after all advance rent, other than the next immediate rental period, and security deposits have deposited at Agent's bank, Agent shall deduct from the rent payments Agent's commission and related fees and shall pay the remainder of the rent payments to Lessor.

Unless otherwise provided herein, the rent (and taxes, if applicable) shall be paid in advance in monthly installments of $ **3,500.00** and shall be due on or before the **TWENTY-SECOND** day of each month during the Agreement Term. Rent (and tax payments, if applicable) must be received by ☐ Agent at 18091 N A1A, Jupiter, FL 33477 or ☒ Owner **RICHARD MCFAGUE, 8039 VISTA FOREST DR. ROANOKE, VA, 24018** on or before the due date. Lessee acknowledges that this may require early mailing. If the monthly rental payment is not received by Lessor/Agent within five (5) days from the date it is due, a "late charge" of 5% of such payment or $50.00, which ever is greater, shall be due Lessor as additional rent.

3. **Miscellaneous Provisions:** <u>NOTE: LESSEE HAS PAID ( 6 )I MONTHS ADVANCE RENT PLUS LAST MONTHS RENT. LESSEE HAS FIRST RIGHT TO PURCHASE BY 10-22-00 IF A SALE DOES NOT TAKE PLACE WITH LESSEE, THEN PROPERTY WILL BE LISTED FOR SALE WITH ADVANCE NOTICE TO LESSEE THROUGHOUT THE REMAINDER OF LEASE. ALSO LISTING AGENT HAS AGREED TO REIMBURSE LESSOR FOR 25 % OF LISTING AGENT'S RENTAL COMMISION ONLY SHOULD LESSEE PURCHASE PROPERTY. ALL CALCULATIONS WOULD TAKE PLACE AT CLOSING DATE.</u>

4. **Keys; Locks; Garage Openers:** No additional locks will be placed upon any door or window by Lessee unless a key is provided Lessor and the additional locks made the property of Lessor. Lessee is responsible for residence keys and garage door openers at all times. Should Lessee misplace keys and Lessor or Agent must be involved to unlock residence or replace items, there will be a minimum charge of $50.00.

5. **Parking:** Lessee agrees to park in designated areas only a maximum of X vehicles **3 CAR GARAGE**.

6. **Pets:** No pets shall be permitted on the premises except: **N/A**. Lessee shall pay a $250.00 non-refundable pet fee per pet for each Agreement term by the Commencement Date of each term. Lessee shall pay to Lessor or Agent all costs or damages caused by the pet. Lessor may deduct repair or damages caused by the pet. Lessor may deduct repair or replacement costs from the pet fee and security deposit. Lessor's consent to allow such pets shall be revocable by Lessor at any time for good cause, i.e. excessive noise, danger to neighbors or general nuisance. No other pets of any kind other than those stated herein shall be kept in or about the premises without the written consent of lessor. Any violation by Lessee of this provision shall be deemed a breach of a material provision of the lease for which Lessor may elect to terminate this Lease.

7. **Occupants:** The number of people occupying the premises shall not exceed 10 (two persons in a one bedroom unit, four persons in a two-bedroom unit, six persons in a three-bedroom unit). If this clause has been violated, Lessor may elect to terminate this Lease or adjust; then the rent set forth in Paragraph 2 of the Agreement shall be adjusted proportionally higher and additional monies

I



GOVERNMENT
EXHIBIT

CASE
NO. 00-403-B-5

EXHIBIT
NO. 6

owed Lessor shall be immediately paid and may be deducted from the security deposit. Lessee shall be responsible for and promptly pay any charges for violation of this clause which exceed the security deposit.

8.  **Payment of Utilities and Maintenance:** Lessee agrees to pay unless Lessor agrees in writing, otherwise, where applicable, all charges for electric, telephone, water and sewer service, garbage collection, and any other services (such as cable TV) (collectively "utility services") during the Agreement term. Lessee is responsible for making all arrangements with utility companies in Lessee's name, including required deposits, for all utility services to be paid for by Lessee. Any utility services charges unpaid by Lessee that are subsequently paid by Lessor shall be deemed additional rent due Lessor thereunder. Lessee agrees to pay the following additional utility charges and be responsible for the following maintenance duties: <u>NOTE LESSEE IS RESPONSIBLE FOR PEST CONTROL WITH EXISTING VENDOR AT MONTHLY FEE OF $ 40.00.</u>

9.  **Security Deposit:**

☐ Lessee's security deposit and advance rent set forth in Paragraph 2 of the Agreement shall be held by Agent on behalf of Lessor at NationsBank, Jupiter, FL 33477. The funds shall be held in a non-interest bearing escrow account.

☒ **Lessee's security deposit and advance rent set forth in Paragraph 2 of the Agreement shall be held by Lessor at** <u>A FLORIDA BANK</u> **The funds shall be held in a (X) non-interest, ( ) interest bearing account.**

On the Termination Date, the premises are to be surrendered to Lessor in as good condition as it is on the Commencement Date. Agent will conduct a departure inspection with Lessee the day of move-out, at lessee's request for a fee of $25.00 which will be deducted from the security deposit. Otherwise inspection will be conducted by Lessor or agent after departure and not subject to any fee. If said inspection discloses damage or theft, Agent or Lessor will have such items repaired or replaced and the cost thereof deducted from the security deposit and the balance, if any, shall be returned to Lessee. If the cost of such necessary repairs or replacement exceeds the amount of the security deposit, Lessee shall be responsible for and promptly pay the excess cost to Agent or Lessor. NOTE: A charge of the greater of $10.00 or 50% of the actual cost to duplicate will be assessed from the security deposit for each key, garage door opener, and/or access card where applicable, not returned to Agent by the Termination Date. In the event Lessee terminates the lease prior to its Termination Date, the entire security deposit and advance rent, if any, will be forfeited and there shall be no reprobation or refund of rental. Lessor reserves the right to seek additional damages if they exceed the forfeited amount.

Upon the vacating of the premises for termination of the Agreement, the Lessor shall have fifteen (15) days to return the security deposit, together with interest if otherwise required, or in which to give Lessee written notice by certified mail to Lessee's last known mailing address of its intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

"This is a notice of our intention to impose a claim for damages in the amount of $_____ upon your security deposit, due to _____ It is sent to you as required by Section 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within fifteen (15) days from the time you receive this notice or we will be authorized to deduct the claim from your security deposit. Your objection must be sent to Sherlock Home finders, Inc., 18091 N A1A, Jupiter, FL 33477."

Lessor will seek additional damages if damages exceed the deposit.

If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive its costs plus a reasonable fee for its attorney. The court shall advance the cause on the calendar.

10. **No Assignment or Subletting:** Lessee shall not sublet or assign any part of the premises

11. **Default; Severability.** Lessee shall be in default under this Agreement if it fails to pay any Rental when due or violates any other provision of the Agreement. Upon such a default, Lessee shall become a tenant at sufferance. In the event a rent check is returned for insufficient funds, Lessee agrees to pay a $25.00 charge. If lessee pays rent late or its check is returned for insufficient funds more than twice it shall be in default of this Agreement. If any installments of rent shall remain unpaid for three (3) days after written notice of such non-payment shall have been sent to Lessee, then the entire Rental to the end of this Agreement term shall become immediately due and payable without demand and may be received by summary procedure or otherwise in addition to any other rights or remedies Lessor may have. All of the remedies provided for herein shall be in addition to any and all other rights and remedies Agent or Lessor have at law or in equity. No assent, express or implied, to any breach of any provision of this Agreement shall be deemed to be a waiver or any succeeding or other breach. In the event any section of this Agreement shall be held to be invalid, this shall not affect the remaining provisions.

12. **Governing Law and Venue:** This Agreement shall be construed under and governed by the laws of the State of Florida. Any legal action concerning this AGREEMENT at Lessor's option shall be brought in the County Court or Circuit Court, Palm Beach County, Florida. In any legal proceeding concerning this Agreement, the prevailing party shall be entitled to recover the costs of the proceedings including a reasonable attorney's fee. The court shall advance the cause on the calendar

13. **Clogged Sinks or Toilets.** Lessee will not allow anything to be thrown into waste pipes leading from bathroom, kitchen or other fixtures which can clog them. If such clogging occurs, the cost of plumbing service will be paid by Lessee.

2

14. **Visitors:** No other persons, other than those stated on the Agreement, may remain in the premises for more than ten (10) days without the expressed written consent of the Lessor.

15. **Signs:** No sign, advertisement, notice, doorplate, or any similar device may be inscribed or engraved or fixed to any part of the outside or inside of the premises.

16. **Alterations of the Premises:** No alterations or modification of the premises will be made without written consent of the Lessor, any such permitted alteration shall become the property of the Lessor. The premises shall not be painted or redecorated while rented by the Lessee unless agreed to by Lessor in writing. Decorations and pictures may be hung on interior walls using standard pin picture hangers. Tape or heavy duty molly-hangers are not to be used. If, in the sole opinion of Lessor, the premises are in need of repainting at the Termination Date, the costs of such repainting and any repairs to the walls shall be paid for by Lessee and may be charged against Lessee's security deposit.

17. **Clean and sanitary:** Lessee shall keep the premises clean and sanitary, remove all trash and garbage in a clean and sanitary manner (garbage must be disposed of in plastic bags tied tightly and deposited in specifically designated containers) Lessee shall also keep all plumbing fixtures clean, sanitary, and in repair.

18. **Use of Property, Generally:** The premises are to be used only as a one family residential dwelling. Lessee agrees to restrict its use for such purpose, and not to use or permit the use of the premises for any other purpose. Lessee further agrees not to use or permit to be used these premises for any illegal, immoral, or improper purpose, and not to make or permit any disturbance, noise, or annoyance whatsoever detrimental to the premises or to the tranquility, well-being, and comfort of any of the other inhabitants or neighbors.

19. **No Use that Increases Insurance Risk:** Notwithstanding any other provisions contained in this Agreement, Lessee shall not use or permit the premises to be used in any manner that will increase risks covered by insurance on the building where the premises are located so as to increase the rate of insurance on the premises. Lessee further agrees not to keep on the premises, or permit to be kept thereon, anything prohibited by any policies of insurance covering the premises.

20. **Access, Inspection and Relating of Premises:** Lessor and Agent reserves the right to enter the premises at all reasonable times to inspect such premises, to perform required maintenance and repair, and to make additions or alteration to any building in which the premises is located, and Lessee agrees to permit Lessor to do so. Lessor shall not be under any obligation to reduce Lessee's rent for the premises during such period, and shall not incur any liability to Lessee for disturbance of quiet enjoyment of the premises or loss of occupation thereof, whether same be partial or total. Lessor also reserves the right to enter onto the premises in order to show said premises to prospective lessees or buyers at all times with reasonable notice. Lessor shall also have the right to post such signs it deems necessary to re-lease or sell the premises.

21. **Repairs and Maintenance:** Lessee agrees to take good care of the premises and the carpeting, appliances, fixtures and equipment therein, and shall keep and maintain them, in good repair and condition, unbroken and operable. Lessee accepts responsibility for any damages or replacements to the premises other than ordinary wear and tear whether resulting from the misuse or negligence of Lessee, a member of Lessee's family, or other person on the premises with Lessee's consent or otherwise. Lessee agrees to permit Lessor to have any damages repaired prior to the Termination Date. The Lessee shall not make the repairs himself nor deduct the cost of any repairs from the rent. The cost of such repairs shall be paid by Lessee to Lessor as additional rent within five (5) days of rendition of Lessor's bill concerning such costs. There shall be no allowance to Lessee and no liability on the part of Lessor by reason of inconvenience or annoyance arising from the making of any repairs, alterations, additions or improvement to the premises or any portion of the building in which the premises are located.

In the event Lessee fails to pay any of the above repair and maintenance charges when requested to do so by Lessor, the Lessor, at its sole option, may deduct all such expenses from the Lessee's security deposit and Lessee hereby expressly authorizes such deduction if Lessor exercises its option to do so.

Lessee agrees to thoroughly clean premises prior to vacating the premises or an additional charge will be made for professional cleaning. In the event the carpeting is not cleaned to the reasonable satisfaction of the Lessor, Lessee will be charge for cleaning same. Lessee also agrees to clean the electric range and refrigerator in order to restore them to the condition in which they were received by Lessee, allowing for reasonable wear and tear. In the event the electric range and refrigerator are not cleaned to the satisfaction of the Lessor, Lessee will be charged for cleaning same.

22. **Notice:** Any notice pursuant to the Agreement must be in writing and hand-delivered or sent by certified mail to the last known address of the party to whom notice is to be given, as designated by such party in writing. Lessee agrees to furnish Lessor all applicable residence and work telephone numbers as soon as available and to immediately notify Lessor as to any change thereof.

23. **Lessor's Disclaimer:** Lessor shall not be responsible or liable to Lessee for any injury, death or damage resulting from acts or omissions of person occupying property adjoining or near the premises or any part of the building of which the premises is part, or for any injury, death or damage to personal property resulting to Lessee or his property from theft, fire, explosion, falling plaster, steam, gas, electricity, water, mildew, or leaks from any part of the building in which the premises are situated, or from the bursting, stoppage or leaking of water, gas, sewer or steam pipes, or from appliances or plumbing, or from the roof, street or subsurface or from any other place, or by dampness or by any other cause whatsoever, except where work loss or damage arises from the willful or gross negligent misconduct of the Lessor, its agents, servants, or employees or from Lessor's failure to make the repairs which it is obligated to make hereunder.

24. **Time of Essence:** Time is of the essence regarding this Agreement.

3

25. Indemnification of Lessor: Lessee shall defend, indemnify and hold harmless Lessor and the agents, servants and employees of Lessor from and against any and all liability, loss, claims, suits, actions, damages, expenses and causes of action arising out of or related to this Agreement for any personal injury, loss of life, and damage to property (1) by reason or as a result of Lessee's occupancy thereof, or (2) occurring in or about the premises, and from and against any order, judgments, or decrees which may be entered thereon, whether or not covered by insurance.

Lessee shall defend, indemnify and hold harmless Lessor against any liability or loss arising out of injury to any person, or damage to any property belonging to Lessee or to any other person, occurring in or about the premises where such injury or damage is caused by fire or other casualty not covered by Lessors' insurance, by leakage in any part of the premises, or by mildew, water or rain that may leak into or flow from any part of the premises, except injury or damage which results from the failure to Lessor to make repairs which it is obligated to make under the Agreement.

All personal property placed in the premises, or in the storage rooms, or any other part of the building, shall be at the risk of Lessee or the owner of such property. Lessor shall not be liable for any loss or damage to such personal property or from any act of negligence of any co-tenant or occupant of the building.

**BY SIGNING THIS RENTAL AGREEMENT THE TENANT AGREES THAT UPON SURRENDER OR ABANDONMENT, AS DEFINED BY THE FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.**

26. Insurance: Lessee shall be responsible for insurance on his own property and agrees not to hold Lessor or Agent liable for any damages to Lessee's property on or nearby the premises.

27. Condominium/Homeowners Association Approval: If the premises are in a Condominium or Homeowners Association, the leasing of the premises may be subject to the prior written approval of the Condominium or Homeowners Association documents, bylaws, and rules and regulations as/may be established and amended from time to time. Lessee shall abide by all such documents, bylaws, and rules and regulations and pay any fees charged by the Association for screening or approval.

LESSORS _____    LESSEE _____

28. Termination upon Sale: In the event the premises are sold or under contract for purchase with an arms-length purchases for value, the Lessor shall have the right to terminate the Agreement upon no less than sixty (60) days prior to written notice to Lessee.

NOTE: LESSOR AFTER 10-22-00 HAS THE RIGHT TO GIVE NOTICE (WRITTEN) OF SALE IF APPLICABLE TO LESSEE.

29. Interruption of Service: Interruption or failure of any service required to be furnished to Lessee by Lessor, if due to caused beyond Lessor's control, shall not entitle Lessee to any allowance or reduction of rent.

30. Taxes: Lessee shall be liable for and shall pay any sales, use, bed, or other similar tax on all amounts paid by Lessee to Lessor thereunder, including without limitation, those taxes listed in Paragraph 2 of the Agreement.

31. Entire Agreement: The agreement, application, inventory inspection and pre-occupancy orientation forms contain the entire understanding between the parties and may not be changed or modified except in writing and signed by all parties and shall inure to the benefit of the respective heirs, successors, assigns and legal representatives of the parties hereto.

32. Management: Lessee shall notify OWNER at 1-540 776-6558 in the event repairs are required on the premises.

33. Fees and Expenses: If lessee shall default in the performance of any provision of the Agreement of Lessee's part to be performed, or if Lessor is required to take any action to enforce the Agreement, or the defend the validity of or interpret the Agreement, then the Lessor shall be entitled to recover all costs and expenses incurred thereby, including court costs and reasonable attorney's fees. Such fees and expenses shall be deemed to be additional rent thereunder and shall be paid by Lessee to Lessor within five (5) days of rendition of a bill to Lessee concerning such costs and expenses.

34. Holding Over–Double Rent: If Lessee holds over and continues in possession of the premises, or any part thereof, after the expiration of the Agreement without Lessor's written permission, Lessor may recover double the amount of the last full rent due for each day Lessee holds over and refuses to surrender possession. Such daily rent shall be computed by dividing the rent for the last month of the Agreement by fifteen.

35. "As Is" Lessee has inspected the premises and is familiar and satisfied with its present condition. The taking of possession of the Premises by Lessee shall be conclusive evidence that the Premises were in good and satisfactory condition at the time such possession was taken unless exception was made within forty-eight (48) hours of occupancy in a move-in report.

36. Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

37. Lead-Based Paint Disclosure: (   ) This property was built before 1978. If checked, Lessee acknowledges receipt, before becoming obligated under the Agreement, of the Environmental Protection Agency (EPA) lead hazard information brochure entitled "Protect Your Family From Lead in Your Home." Lessor knows of the presence of the following lead-based paint or lead-based paint hazards in the property:
_____ and has provided Lessee with any lead hazard evaluation report in Lessor's possession.

4

38.  **Termination of Agreement:**   If Lessor agrees to release Lessee from the Agreement prior to the Termination Date and return advance rent and security deposits, all the following conditions must be met:

    a.    Lessee delivers 45 days prior written notice to Agent of his desire to terminate this Agreement pursuant to this provision.

    b.    By sending this 45 days notice Lessee expressly releases Lessor from any and all claims or matters arising out of or related to this Agreement.

    c.    Lessee is current on the payment of all sums due under the Agreement and otherwise complies with all other provisions in the Agreement through the early termination date as if it were the Termination Date.

    d.    Lessee must pay Lessor an amount equal to one month rent plus ten percent (10%) of the unpaid Rental.

    e.    Lessee vacates premises by the date in the 45 days notice.

    f.    Lessee complies with such other terms and conditions as Lessor may require.

N/A  39.  **Agency Disclosure:**   By executing the Agreement, Lessee acknowledges receipt of the Agency Disclosure.
(Lessee's initials)

40.  **Commissions:**   Lessee acknowledges that Agent is Lessor's real estate broker in connection with the premises and that a commission shall be due Agent upon the execution of this Agreement for any lease renewal, extensions or reletting, or any sale of the premises between Lessor and Lessee.  Lessee covenants to Agent, as third party beneficiary to this Agreement, that it shall not attempt through any means to circumvent Agent's entitlement to a commission.  NOTE: OPAL REALTY IS LISTING AGENT ON ANY SALE OF THIS PROPERTY DURING THE TERM OF THIS CONTRACT.

IN WITNESS WHEREOF, the parties have signed this Agreement on the day and year first above written.

**WITNESSES:**

_____    _____

_____    Owner's Name by Officer or by Sherlock Home Finder's, Inc., as Agent for owner.

_____    Lessee

_____    X_____
                                           Lessee

Prepared by Jeck, Harris, Jones & Kaufman, Attorneys at Law

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA                    CASE # _00-5091-Vitunac_

vs. Tony ISSA                    REPORT COMMENCING CRIMINAL ACTION

SALIM MATTA                    PRISONER # _53781-004_

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TO CLERK'S OFFICE, UNITED STATES DISTRICT COURT: (CIRCLE ONE)


MIAMI     FT. LAUDERDALE     WEST PALM BEACH     FT. PIERCE

(CIRCLE APPROPRIATE LOCATION FOR APPEARANCE IN MAGISTRATE COURT)
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ALL ITEMS ARE TO BE COMPLETED.  INFORMATION NOT APPLICABLE OR
UNKNOWN TO BE INDICATED BY "N/A"

1) DATE AND TIME OF ARREST: ___4-19-00___

2) LANGUAGE(S) SPOKEN: ___ARABIC___

3) OFFENSE(S) CHARGED: ___Bank Fraud  T-18 Sec 1344___

4) U. S. CITIZEN  [  ] YES  [ X ] NO  [  ] UNKNOWN

5) DATE OF BIRTH: ___4-8-42___

6) TYPE OF CHARGING DOCUMENT: (CHECK ONE)
   [  ] INDICTMENT        [ X ] COMPLAINT TO BE FILED/ALREADY FILED
   [  ] BENCH WARRANT FOR FAILURE TO APPEAR
   [  ] PROBATION VIOLATION WARRANT
   [  ] PAROLE VIOLATION WARRANT

   CASE # _____

   ORIGINATING DISTRICT: ___SDF___

   COPY OF WARRANT LEFT WITH BOOKING OFFICER [  ] YES [  ] NO

7) AMOUNT OF BOND: _____

8) ARRESTING AGENT: _____

9) AGENCY: _____

10) COMMENTS: _____